GATES *against* McKEE.

The defendant wrote to the plaintiff, a dealer in leather, in behalf of M. E. McKee, a shoemaker, the following letter: "Sir, I will be responsible for what stock M. E. McKee has had or may want hereafter, to the amount of five hundred dollars;" *Held*, a continuing guarantee and not exhausted by purchases of and payments for stock to the amount mentioned.

*Held*, also, that it expressed the consideration within the requirement of the statute of frauds.

The rules of construction applicable to guarantees and other contracts of sureties stated by DENIO, J.

THE action was upon an instrument of which the following is a copy:

"*Middleport, Feb.* 6, 1844.

"Mr. Gates—Sir: I will be responsible for what stock M. E. McKee has had or may want hereafter to the amount of five hundred dollars.

CHAUNCEY McKEE."

The cause was tried at the Orleans county circuit, before Justice Mullett, without a jury. The plaintiff read in evidence the instrument above set out, its execution by the defendant being admitted; and proved that at the time it was executed and thence ensuing, the plaintiff was a tanner and currier, and dealer in leather and stock for the shoemaking business at Barre, in the county of Orleans, and that M. E. McKee was a shoemaker and carried on business at Middleport, in the county of Niagara. At the time the instrument was executed by the defendant, there was due from M. E. McKee $60.44 for stock, previously sold and

delivered to him by the plaintiff. After the instrument was delivered to the plaintiff and prior to January, 1850, he sold and delivered to M. E. McKee stock for the shoemaking business, to the amount of $1045.65. Prior to the date last mentioned, M. E. McKee paid to the plaintiff the amount due him at the time the instrument was executed, and also sundry amounts from time to time on account of the stock sold after its execution, amounting in all to $525.65, leaving a balance due the plaintiff on the 5th of January, 1850, from M. E. McKee of $520, for which he then executed to the plaintiff his due bill. Subsequently and before the commencement of the action M. E. McKee made further payments to the plaintiff, reducing the amount due the latter to $408.89. The plaintiff claimed to recover of the defendant this amount.

Upon these facts the counsel for the defendant insisted that the plaintiff was not entitled to recover, because : 1. The instrument signed by the defendant did not express, nor did the evidence show a sufficient consideration to uphold it ; 2. If valid it was an absolute contract for the purchase of goods by the defendant to the amount of $500 and not a contract of guarantee ; 3. If it was to be regarded as a contract of guarantee, it was not a continuing guarantee ; 4. That M. E. McKee having paid more than $500 on the account, which accrued for property sold after the execution of the contract by the defendant, the latter was thereby discharged. The court overruled each of said objections, and decided that the plaintiff was entitled to recover the balance due, being $408.89, and ordered judgment for this amount. The counsel for the defendant excepted. The judgment was affirmed at a general term of the court in the 8th district. The defendant appealed to this court.

*Nathan Dayton*, for the appellant.

*S. E. Church*, for the respondent.

Gates *against* McKee.

DENIO, J.   If this were the first time that an instrument
of this character had been before a court, and we were now
called upon to construe it without the light of adjudged
cases, the first inquiry would naturally be whether the limit
of $500 related to the amount of purchases to be made by M.
E. McKee or to the defendant's ultimate liability; and I think
it clearly qualifies the responsibility of the defendant and
not the amount of M. E. McKee's future transaction with
the plaintiff.   It is as if he had said " I will be responsible
to the amount of $500 for what stock M. E. McKee has
had or may want hereafter," &c.   I also think that the
words " what stock " in their relation to future purchases,
have the force of *whatever stock* or *whatever. amount of stock*
he may want hereafter; and the word " stock" alone
denotes the *supply of materials* for the business of the party
spoken of.   The word " hereafter" seems to be used in an
indefinite sense.   It is not at any particular time in the
future, but as if it were written *at any time hereafter*.   The
words " may want" are significant as to the character of
the future dealings in contemplation, and they mean the
same thing as may *need or require* or may have occasion for.
M. E. McKee was a shoemaker, and the plaintiff was a
leather manufacturer; and reading of the paper as relating
to their respective occupations and giving the language the
interpretation which I have suggested and leaving out what
is said of past indebtedness as immaterial, the following para-
phrase would appear to me to express its true meaning: " Sir,
I will be responsible to the amount of five hundred dollars for
whatever amount of materials in his line, M. E. McKee may,
at any time hereafter require."   This is not a refined or
artifial interpretciation, but it is what the plaintiff or any
other person to whom such a paper might be addressed,
would naturally, and in my opinion, unavoidably understand
from it.   If this is the meaning which the paper naturally
conveys, it is the sense which the court is bound to apply
to it.   The cases are not entirely harmonious as to the prin-

ciples of construction which ought to govern in this class of cases, but the weight of authority is altogether in favor of construing guarantees by rules at least as favorable to the creditor as those which courts apply to other written contracts, irrespective of the consideration that the guarantor is a surety. In *Mason* v. *Pritchard* (12 *East.*, 227), the court said the words were to be taken as strongly against the party giving the guarantee as the sense of them would admit. The same remark is found in the opinion of the supreme court of the United States in *Drummond* v. *Prestman* (12 *Wheat.*, 515), which was the case of a guarantee. In *Douglass* v. *Reynolds* (7 *Peters*, 113, 122), Judge Story said, speaking of guarantees, " as these instruments are of extensive use in the commercial world, upon the faith of which large credits and advances are made, care should be taken to hold the party bound to the full extent of what appears to be his engagement." In *Lawrence* v. *McCalmont* (2 *Howard*, 426), the attention of the same learned judge was directed particularly to this question of construction. After remarking that a question had been made on the argument whether the letters of guarantee under consideration should receive a strict or a liberal construction, he said : " We have no difficulty whatsoever in saying that instruments of this sort ought to receive a liberal interpretation. By a liberal interpretation we do not mean that the words should be forced out of their natural meaning, but simply that the words should receive a fair and reasonable interpretation, so as to attain the objects for which the instrument is designed and the purposes to which it is applied. We should never forget that letters of guarantee are commercial instruments, generally drawn up by merchants in brief language, sometimes inartificial, and often loose in their structure and aim ; and to construe the words of such instruments with a nice and technical care would not only defeat the intention of the parties, but render them too unsafe a basis to rely on for

Gates *against* McKee.

extensive credits, so often sought in the present active business of commerce throughout the world." Further on he says: "If the language used be ambiguous and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor; for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words, by which the other party is misled to his injury." These extracts express so happily my notion of the rules of construction, which ought to prevail in this class of cases, that I need only add, that the same general principle will be found asserted with more or less distinctness in *Bell* v. *Bruen* (1 *How.*, 169, 186); *Haight* v. *Brooks* (10 *Adolph. ana Ellis*, 309); *Mayer* v. *Isaac* (6 *Mees. and Welsb.*, 605); *Dobbin* v. *Bradley* (17 *Wend.*, 422); *Hargreave* v. *Smee* (6 *Bing.*, 244.) In the last case C. J. Tisdale said: "There is no reason for putting on a guarantee a construction different from what the court put on any other instrument. With regard to other instruments, the rule is that if the party executing them leaves anything ambiguous in his expressions, such ambiguity must be taken most strongly against himself." And Bronson, J., in the case referred to from 17 *Wendell*, remarks that commercial guarantees are in extensive use, and that he can perceive no reason why they should not receive the same liberal construction for advancing the end which the parties had in view, as is given to other contracts. I am aware that judges have in some few instances spoken of the construction *strictissimi juris* as the one to be applied to all contracts where sureties are sought to be charged, and that Judge Story himself, in an earlier case than the one from which I have quoted, expressed the opinion that where it was doubtful whether a guarantee created a continuing obligation, the presumption should be against it. (*Cremer* v. *Higginson*, 1 *Mason*, 336. There is a sense undoubtedly, in which it may be said that

these obligations are to be strictly construed; and it is this: That the surety is not to be held beyond the very precise stipulations of his contract. He is not liable on an implied engagement where a party contracting for his own interest might be, and he has a right to insist upon the exact performance of any condition for which he has stipulated, whether others would consider it material or not. But where the question is as to the meaning of the written language in which he has contracted, there is no difference, and there ought not to be any, between the contract of a surety and that of any other party. I feel no difficulty, therefore, in reading the short instrument which we are called upon to construe in the sense which every person, when informed of the situation of the parties and who had considered the nature of the business it was designed to facilitate, would naturally place upon it. If I am right in the meaning which I have attributed to the several expressions contained in it, it did not look to a single transaction or to dealings between the parties to a particular amount, and its purposes were not fully accomplished when the person whose credit was intended to be aided, had once contracted a debt to the plaintiff to the amount of $500, and had paid that debt. It contemplated a continuous business and a standing credit to the amount mentioned. If I am right in this (and the question is merely one of construction), there is no case or dictum which I have met with, which will exonerate the defendant. The adjudications are very numerous, and although I have examined more than I can conveniently refer to, I will mention the following only, each of which contains principles which will uphold the conclusion which I have arrived at, that this contract is a continuing guarantee. (*Fellows* v. *Prentiss*, 3 *Denio*, 518; *Hand, Senator*; *Clark* v. *Burditt*, 2 *Hall*, 197; *Douglass* v. *Reynolds*, 7 *Peters*, 113; *Bent* v. *Hartshorn*, 1 *Metc.*, 24; *Barstow* v. *Bennett*, 3 *Camp.*, 290; *Rapelye* v. *Bailey*, 5 *Conn.*, 149; *Mayer* v. *Isaac*, *supra*; *Mason* v. *Pritchard*, *supra*; *Hargreave* v. *Smee*, 6

Gates *against* McKee.

*Bing.*, 244; *Allen* v. *Kenning*, 9 *id.*, 618; *Hitchcock* v. *Hum·frey*, 5 *Mann. and Gr.*, 560 ; *Martin* v. *Wright*, 6 *Adolph, and Ellis*, N. S., 917). In several of these cases the intention to guarantee a continuous trading was much more distinctly expressed than in the present case; but in others, such as *Mason* v. *Pritchard*, which has repeatedly received the sanction of the courts in this country and has never been disapproved of in any court, and in *Martin* v. *Wright*, which was decided quite recently, the same liberal, or I may rather say natural and reasonable intendment was made, which I have supposed ought to be applied to the instrument under consideration.

The objection that the consideration was not sufficiently expressed to satisfy the requirement of the Revised Statute of frauds, is answered by the judgment of this court in *The Union Bank* v. *Coster's Exrs.*, (3 *Comst.*, 204).

I am in favor of affirming the judgment of the supreme court.

HAND, J., also delivered an opinion in favor of affirmance.

Judgment affirmed.[1]

---

[1] Re-affirmed in *Rindge* v. *Judson*, 24 N. Y. 64. And see *Clark* v. *Burdett*, 2 Hall 197. *White's Bank* v. *Miles*, 73 N. Y. 335. *Pratt* v. *Matthews*, 24 Hun 386. *Sickle* v. *Marsh*, 44 How. Pr. 91.