## THE STATE, USE, &c. *v.* JOHN M. STEWART.

1. EVIDENCE: PRINCIPAL AND SURETY: WHEN ADMISSIONS OF PRINCIPAL EVIDENCE AGAINST THE SURETY.—An inventory returned by a guardian in the course of his duties, acknowledging the receipt of assets belonging to the ward, is admissible in evidence in a suit by the ward against the guardian's surety, and is *prima facie,* but not conclusive, evidence against the latter of the reception of assets, as stated in it. See *Goss* v. *Watlington,* 3 Brod. & Bing. 132; *Whitnash* v. *George,* 8 Barn. & Cress. 556; *Middleton* v. *Melton,* 10 Barn. & Cress. 317; *Drummond* v. *Prestman,* 12 Wheat. 515–523; *Treasurer* v. *Bates,* 2 Bailey 363; *Mann* v. *Yazoo City,* 31 Miss. R. 574.

2. GUARDIAN AND WARD: REMOVAL OF GUARDIANSHIP: LIABILITY OF GUARDIAN ON HIS SECOND BOND FOR ASSETS WASTED BEFORE ITS EXECUTION.—A guardian appointed in one county, who afterwards removes to another, and takes out letters of guardianship there, in pursuance of the statute, Hutch. Dig. 667, ?

The State *v.* Stewart.

3, is liable on his bond executed upon the second grant of his letters of guardianship, for moneys of the ward received and appropriated to his individual use during the original guardianship, and stated in his accounts and settlement of that guardianship, as due to the ward.

ERROR to the Circuit Court of Holmes county. Hon. E. G. Henry, judge.

*J. M. Dyer*, for the plaintiff in error,

Cited Hutch. Dig. 677, § 3; *Waterman* v. *Bigham & Hudson*, 2 Hill, Ch. R. 512; and insisted that the case of *Mann* v. *Yazoo City*, 31 Miss. R. 574, was clearly distinguishable from the case, inasmuch as the treasurer of that corporation held his office for a stated and determinate period, and in the present, the bond of the guardian was continuous.

*W. Brooke*, for defendant in error,

Cited and relied on *Mann* v. *Yazoo City*, 31 Miss. R. 574.

HANDY, J., delivered the opinion of the court.

This action was brought by the plaintiff in error against the defendant, as surety on the bond executed by one Boling, as the guardian of the usee of the plaintiff, under an appointment by the Court of Probates of Holmes county.

The condition of the bond is, that "if the said Boling, as guardian to James S. Reily (the usee), shall faithfully discharge all the duties required of him by law, shall faithfully account with the Probate Court of Holmes county, for the management of the property and estate of the orphan under his care, and shall also deliver up said property, with its increase and profits, agreeably to the order of said court, or the directions of law, and shall in all respects perform the duty of guardian to said James S. Reily, according to law," then the obligation shall cease. And the breach alleged in the declaration is, in substance, that, upon petition filed in the said Court of Probates, in behalf of the usee against the administrator of Boling (who was then deceased), praying an account of his guardianship, the administrator returned a final account, showing that there was due from Boling, as guardian, the sum of $7824; which sum, except interest, came to his hands

after he was appointed guardian; and thereupon it was ordered by that court, that said administrator pay to the use of the ward that sum of money, and that the same, with interest, remains due and unpaid.

The defendant answered, denying that the sum of $7824 (except the sum of $461) came to the hands of Boling after the grant of letters of guardianship to him by the Court of Probates of Holmes county, and after the defendant became surety; and averring that Boling had previously been appointed guardian to the ward, by the Orphan's Court of Sumpter county, Alabama, and also by the Court of Probates of Noxubee county, in this State; and that, while acting as guardian in Sumpter and Noxubee counties, he received and appropriated to his own use the sum of $6063 85, which, with the sum of $1303, interest on that sum, forms the principal part of the sum with which he is charged in the final account of his administrator, returned to the Probate Court of Holmes county; and admitting that assets to the amount of $461 came to the hands of Boling, as guardian, after the 6th June, 1853, for which the defendant is responsible.

To this the plaintiff replied: 1st. Alleging that the sum demanded came to the hands of Boling after the grant of letters of guardianship by the Court of Probates of Holmes county, and denying that the same was received and expended by Boling while acting as guardian under his appointment in Sumpter and Noxubee counties. 2. That Boling, by his inventory filed in the Court of Probates of Holmes county after his appointment by that Court, and after the execution of the bond sued on, reported that he had received for his ward, in cash, the sum of $6063 85, and that the defendant is bound thereby.

The defendant filed a demurrer to the second replication, and the demurrer was sustained. A trial was then had on the issue made by the first replication, and the plaintiff read to the jury the inventory returned by Boling to the Court of Probates of Holmes county, which is as stated in the second replication; also the final account of his administrator, which is as stated in the declaration.

The defendant then read to the jury the bond and record of the appointment of Boling as guardian in Sumpter county, Alabama, and his various accounts as such, returned to the Orphan's

Court of that county, whereby Boling was charged, on the 19th July, 1852, with a balance in cash of $5318 38, due his ward, and also with certain named slaves, and hire for which he was accountable to the ward; also the order of that court thereupon, reciting that it appeared to the court that Boling had given bond with good security, in Noxubee county, in this State, of which both the guardian and ward were then residents, and approving the removal of the ward's estate to that county,—the liabilities stated to be accounted for with the court in Noxubee county, and the sureties on his bond in Sumpter county, being released to the extent of the settlement then made.

He also read the account and final settlement of Boling, made in the Court of Probates of Noxubee county, at October term, 1852, showing the sum of $6063 85 due the ward, in cash; also the petition of Boling to that court, praying leave to remove the person and property of his ward to Holmes county; that his guardianship and the settlement of his accounts then on file in the court in Noxubee county, be ordered to be transferred to Holmes county.

He also introduced and examined witnesses to prove that Boling had but little money, and was insolvent after his appointment in Holmes county.

The plaintiff moved the court, upon this evidence, to instruct the jury, that "if they believe from the evidence that John H. Boling, the guardian of James S. Reily, filed an inventory, as guardian of his ward, in the Probate Court of Holmes county, after his appointment, and after the defendant became his surety, and therein stated, that he had received for his ward $6063 85 in cash, that the defendant, his surety on his guardiam bond, is estopped thereby, and cannot deny that the money came into Boling's hands after his appointment;" and the court refused to grant the instruction.

A verdict was rendered for the plaintiff, for $565 35, which he moved to set aside, and for a new trial; because the court erred in refusing the instruction above stated, and because the verdict is contrary to law and the evidence. This motion was overruled, and the plaintiff excepted, and now brings the case here.

The first error assigned is, the action of the court in sustaining the demurrer to the plaintiff's replication. The question raised by

the replication is, whether the defendant was not estopped, by the inventory returned by Boling to the Court of Probates of Holmes county, after his appointment as guardian by that court, admitting that he had received a particular amount of money due his ward after that appointment, from denying such receipt of the money by the guardian. The replication set up this admission as an estoppel, and the same proposition is insisted upon in the instruction asked by the plaintiff; but the court held that the matters relied on were not an estoppel against the defendant.

In this we think that the court was correct. It is true that the inventory, being a matter directly pertaining to the duties of the guardian, and for which the surety had become bound, was admissible evidence·to show the receipt of the money, as alleged. It was evidence against the principal, and being done in the course of his duties, such a privity subsisted between him and the surety as to make it competent evidence against the latter. *Goss* v. *Watlington*, 3 Brod. & Bing. 132; *Whitnash* v. *George*, 8 Barn. & Cres. 556; *Middleton* v. *Melton*, 10 Barn. & Cres. 317. But it is *not conclusive* against the surety. *Drummond* v. *Prestman*, 12 Wheat. 515–523; *Treasurer* v. *Bates*, 2 Bailey, 363; *Mann* v. *Yazoo City*, 31 Miss. 574; and hence the ruling of the court upon the replication and the instruction was correct.

But it is insisted that the defence set up by the plea is insufficient, and that the demurrer to the replication should have been extended back to the plea, and judgment rendered thereon for the plaintiff.

The plea alleges, in substance, that previous to taking out the letters of guardianship in Holmes county, Boling had been appointed guardian in Sumpter county, Alabama, and in Noxubee county, in this State, by the Court of Probates of the last-mentioned county, and that he had received and appropriated to his own use the greater part of the sum demanded, while acting as guardian in those counties; and hence concludes, that the bond sued upon in this action, does not extend to the default made before its execution. It is not distinctly stated in the plea, that the guardian made a final settlement of his account with the Court of Probates of Noxubee county, showing the state of his account with his ward, and that thereupon, letters of guardianship were granted by the court in Holmes county, in consequence of the guardian having

The State *v.* Stewart.

removed, or the property of the ward having been transferred to that county. But this must be taken as intended; because only under such circumstances does the statute allow letters of guardianship to be granted in one county, where letters have been previously granted; and the guardianship is still pending in the Court of Probates of another county of this State. The plea, then, presents the question, whether a guardian, having taken out letters in one county in this State, and afterwards removed to another county in the State, and taken out letters of guardianship in that county, is liable upon the bond given upon the grant of the second guardianship; for moneys of the ward received and appropriated to the guardian's individual use, during the original guardianship, and stated in his account and settlement of that guardianship in the Court of Probates, as due the ward. And this depends upon the nature and purposes of the second guardianship, and upon the terms and scope of the bond given thereupon.

The nature of the proceeding is to be ascertained from the statute which authorizes it; which is, that "whenever any person obtaining letters of guardianship, &c., in any county within this State, shall remove to any other county in said State; or when any property under the charge of any guardian, &c., shall be removed from the county in which letters of guardianship, &c., were granted; the Probate Court of the county to which such guardian, &c., may remove, or to which such property may be transferred, shall have full power and authority to grant to such person or persons as may be entitled thereto, letters of guardianship, &c.; and upon the granting of such letters to the person or persons who may obtain the same on such removal, it shall be the duty of the Probate Court of that county, in which the original letters of guardianship were granted, to cause a final settlement to be made with the original guardian, &c.; and upon such settlement, and a compliance therewith, by such guardian, &c., to discharge him, her, or them, from any further responsibility on account of the same." Hutch. Dig. 677, § 3.

This statute plainly requires that a final settlement of the original guardianship, shall be made with the court by which the original letters were granted, and "upon such settlement, *and a compliance therewith,* that the guardian be discharged from any

further responsibility on account of the same." But this is done with direct reference to the new guardianship to be taken in another county. The discharge from responsibility for matters embraced in his account and settlement, is only to be granted "upon his compliance therewith." This "compliance" cannot be done by paying to the ward the amount due him, for his minority continues, and the proceeding is conducted for the express purpose of having the property and assets transferred to a guardian to be appointed in another county. If the original guardian abandons the trust after his settlement, and a different person is appointed guardian in the other county, the former may discharge himself from responsibility by delivering to the new guardian the property, and paying to him the money belonging and due to the ward, as stated in the settlement of the guardian. And if he continues to be guardian by appointment of the court of the county to which he removes, or the property is transferred, he may be discharged, by showing that the property and assets, as stated in his settlement, have been transferred to the new guardianship, and that he has become accountable for the same to the court by which he was newly appointed. But in either case, the newly appointed guardian becomes bound for the property and assets of the ward, found due by the settlement of the preceding guardianship. The bond given in that matter is discharged, and the responsibility settled by the final account is transferred to the new guardian. In the latter case the trust is continuous, and the guardianship is, in effect, merely transferred from one county to another, but continuing in the hands of the same person; and he succeeds to the same responsibilities which rested upon him under his previous guardianship, as settled by his final account. This clearly appears to be the intention of the statute; for it could never have been in contemplation to create two distinct guardianships, each responsible for, and having control of, different portions of the ward's property. The newly appointed guardian, therefore, has the right to receive from his predecessor, the property and money belonging to and due the ward; the assets in the hands of the original guardian are a fund to which the successor is entitled, whether the same or a different person; and when transferred to his hands in virtue of his new appointment, they become assets in his hands, for which he is responsible under his new appointment.

The case is, therefore, broadly distinguishable in principle, from those cases where an officer is appointed for a term, and his duties and responsibilities are limited to that term, after the expiration of which he is appointed for another term to the same office. In such cases, the duties of each term are separate and distinct from the other, and there is no more connection between the duties and responsibilities of each, than if each term was filled by a different individual. But in this case there is a plain connection between the duties of the two offices, the property and funds held under the former, being transferred by the latter appointment to the succeeding guardian, and the settlement being made to that end; and he being accountable for the same as a part of the duties belonging to his new appointment, after having reported them as assets under his new appointment, as fully as a stranger who had been appointed to the second guardianship would have been, if he had received the assets from the original guardian.

Such being the nature of the second guardianship, the guardian is clearly bound, by the terms of the bond sued on, for the amount due by him to his ward, under the settlement of his previous guardianship. He was bound "faithfully to account to the Probate Court of Holmes county, for the management of the property and estate" of the ward, "to deliver up the property with its increase and profits, agreeably to the order of the court," and "in all respects to perform his duty as guardian," &c. The fund remaining in his hands on the settlement of his previous account, was assets for which he was accountable to the Court of Probates. It was his duty to transfer it to his account upon his new guardianship, as the property and estate of his ward; and after that transfer, he was bound for it as so much money in his hands belonging to the ward.

Under this view, the plea was not a sufficient answer to the demand set forth in the declaration, and the demurrer should have been extended back to it and sustained.

The remaining assignment of error is, that the verdict is contrary to law and the evidence. And the question under this assignment is, whether the plaintiff was not entitled to recover the full amount demanded, upon the evidence.

We have above seen that Boling was responsible for the amount due upon his settlement in Noxubee county, after his guardianship

was transferred to Holmes county, and he had charged himself with the amount in the Probate Court of that county. If this be true, there is nothing in the evidence offered in behalf of the defendant, to destroy the force of his admission by his inventory, that he had received under his new appointment, by transfer from his previous guardianship, the amount with which he was charged in his previous settlement. The evidence was offered for the purpose of showing that Boling did not receive the money reported in his inventory, after his appointment in Holmes county, but that he had applied it to his individual use, or wasted it, before that appointment. But that was wholly immaterial. It might have been sufficient for the defendant, to show that the money charged in his settlement never came to the hands of Boling, and that he was charged with it through fraud or mistake, when he was not really chargeable with it. But that is not pretended. It is not denied but that he was properly charged with it in his settlement in Noxubee; and that being admitted, it is immaterial whether he had it in his hands, or had wasted it, when he was appointed guardian in Holmes county; for by his previous settlement in Noxubee, and his appointment in Holmes, his responsibility, as it was fixed by that settlement, was transferred to the guardianship in Holmes, and was covered by the bond here sued on.

Under these views of the case the judgment is reversed, the demurrer sustained to the answer, and the cause remanded for further proceedings, and for a new trial.