## DETERMINED IN THE

# FOURTH DEPARTMENT,

## AT

## GENERAL TERM,

### April, 1881.

---

### FREDERICK J. PRATT, Respondent, *v.* ALONZO C. MATTHEWS, Appellant, Impleaded, etc.

*Guaranty — when a continuing guaranty — when construed in favor of the promisee.*

January 10, 1877, the defendants executed an instrument whereby they agreed with the plaintiff's assignors that one Pope, who had purchased or was about to purchase coal of said assignors, should and would pay them such prices therefor at such time or times as might be agreed upon between them and Pope, for all coal that might be delivered to him up to the 1st day of January, 1878; and in default of his so doing the defendants agreed to pay for the same, provided the amount so in default should not at any time exceed the sum of $1,000.
*Held,* that the guaranty was a continuing one.
That the proviso that the amount in default should not at any time exceed $1,000 was a limitation upon the defendants' liability, and not upon the amount of coal to be furnished, and that the fact that the indebtedness due from Pope for coal exceeded at times that sum, did not relieve the defendants from liability upon the contract.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee.

*Chapman & Lyon,* for the appellant.

*C. D. Adams,* for the respondent.

SMITH, J. :

The action is on an agreement of guaranty executed by the defendants to McKinney & Albright, the plaintiff's assignors. The defendant Matthews, alone, was served with the summons, and the judgment is against him only. McKinney & Albright were wholesale dealers in coal at Utica, and had been selling coal to Alfred C. Pope, a retail dealer at Binghamton. On or about 10th January, 1877, the defendants executed to McKinney & Albright the writing sued on, in which they agreed to and with said firm that Pope, "who has purchased, or is about to purchase, anthracite coal of said firm, shall and will pay said firm at such time or times, and at such prices as may be agreed upon between said firm and said Pope for all coal that may be delivered to him up to the first day of January, A. D. 1878, and in default of his so doing we agree to pay for the same, provided the amount so in default shall not at any time exceed the sum of $1,000." After the instrument was executed, McK. & A. supplied Pope with coal, and on 17th October, 1877, he owed them a balance of $951.66, which he failed to pay. By the arrangement between Pope and the firm he was to pay them cash, on or before the tenth day of each month, for all coal shipped to him during the previous month ; and on the tenth day of each of the months of March, April, May and June he owed them for coal covered by the guaranty more than $1,000, the largest monthly balance being $1,533.64. The appellant contends that as the amount for which Pope was so in default exceeded $1,000, the condition of the guaranty was broken and the defendants are not liable for any sum.

The question is, therefore, whether the proviso amounts to a condition that McK. & A. should not trust Pope for more than $1,000 at any time, the breach of which exonerates the obligors. The authorities agree that contracts of suretyship must be read *strictissimi juris.* But the rule has this extent only, that when the true meaning of the contract is ascertained the surety or guarantor has the right to insist that his liability shall not be extended beyond its precise terms. In interpreting the language used, the same rules of construction are applicable to contracts of suretyship as to other contracts. (*Gates* v. *McKee*, 3 Kern., 232, and cases there cited by DENIO, J..; *Rindge* v. *Judson*, 24 N. Y.,

64, and cases there cited by JAMES, J.; *Hamilton* v. *Van Rensselaer*, 43 N. Y., 244.) A general rule in the construction of contracts is, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. (*White* v. *Hoyt*, 73 N. Y., 505.) That rule has frequently been applied with all its force to contracts of suretyship. There, courts have said that the words are to be taken as strongly against the party giving the guaranty as the sense of them would admit (*Mason* v. *Pritchard*, 12 East, 227; *Drummond* v. *Prestman*, 12 Wheat., 515); that in the case of a guaranty, care should be taken to hold the party bound to the full extent of what appears to be his engagement (*Douglass* v. *Reynolds*, 7 Peters, 113, *per* STORY, J.), and that instruments of guaranty ought to receive a liberal interpretation — that is, not one forcing the words out of their natural meaning, but a fair and reasonable interpretation, so as to attain the objects for which the instrument is designed. (*Laurence* v. *McCalmont*, 2 How. [U. S.], 426.) In the last case cited, Judge STORY said: "We should never forget that letters of guaranty are commercial instruments, generally drawn up by merchants in brief language, sometimes inartificial and often loose in their structure and form; and to construe the words of such instruments with a nice and technical care would not only defeat the intention of the parties, but render them too unsafe a basis to rely on for extensive credits so often sought in the present active business of commerce throughout the world." He also said: "If the language used be ambiguous and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favorable to his rights, that interpretation will prevail in his favor; for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words by which the other party is misled, to his injury." These extracts were quoted with approbation by Judge DENIO in *Gates* v. *McKee* (*supra*). Apply these rules to the case in hand. Clearly the defendants' undertaking is a continuing guaranty, and it contemplated that McK. & A. were to supply Pope with coal during the year 1877. Without the proviso the guaranty would have made the defendants liable for *all* the coal so furnished in case of Pope's default. The

proviso was a limitation. Was it a limitation of the amount of coal to be furnished, as the appellant claims, or of the defendants' liability, as the plaintiff insists and the referee has found? Had the guarantors reason to suppose that McK. & A. understood it in the latter sense? If the question is one of interpretation of the words merely, such supposition seems entirely reasonable, and, in view of the language, we cannot doubt that it was entertained by the promisors. If it is a mixed question of law and fact, to be determined in view of the language not only, but also of the position of the parties and the surrounding circumstances, the referee has impliedly decided it in favor of the plaintiff, and there is no ground for disturbing his finding. If the language fairly admits of two interpretations, then that interpretation must be adopted which is most favorable to the promisees. Thus interpreted, the agreement is to pay for all coal delivered to Pope before the 1st of January, 1878, in case of his default to pay, provided the amount of liability by reason of his default shall not at any time exceed the sum of $1,000. The words "at any time" have the effect to make it clear that the guaranty was a continuing one. But for them, it might have been claimed that when Pope had purchased and paid for a thousand dollars' worth of coal, the liability of the guarantors was at an end. In *Curtis* v. *Hubbard* (6 Metc., 186), the defendant subscribed an instrument containing these words: "I guaranty the payment of all sums which B. may owe C. for goods which he may sell B., *provided* that the whole amount which B. shall owe C. at any one time shall not exceed $1,100, it being the understanding that I am in no event to be liable for more than that sum. * * * And this guaranty is *upon the condition* that said C. shall, once in every eight months, give me notice in writing of B.'s account with him." *Held*, that the proviso that the sum which B. should owe C. at any one time should not exceed $1,100, was not a condition upon the breach of which the defendant's obligation was defeated, but only a limitation of A.'s liability to C. It is evident, from the opinion of Chief Justice SHAW, that the proviso of itself was regarded by the court as limiting the generality of the undertaking, which would have otherwise been a guaranty for an unlimited amount. The subsequent sentence was treated as simply explanatory of the former, and the circumstance

that when the defendant intended to introduce a condition which should defeat the contract it was done in due form and in express terms, was referred to in aid of the interpretation given to the proviso. But it is manifest from the opinion that, independently of the other clauses, the proviso was construed to be merely a limitation of the defendant's liability.

The case of *The Farmers and Mechanics' Bank of Michigan* v. *Evans* (4 Barb. 487), relied upon by the appellant's counsel, is distinguishable from the case at bar. There, the bond first stipulated, in effect, that the sums of money to be furnished by the bank to J. & K. should " at no time exceed the sum of $5,000," and then bound the obligors for the payment of all such sums as J. & K. should receive. There was not in that case, as here and in *Carter* v. *Hubbard*, an unlimited undertaking at the outset, followed by a proviso restricting the liability of the promisor, but the limitation was expressly made the condition of the obligation.

These views lead to an affirmance of the judgment.

TALCOTT, P. J., and HARDIN, J., concurred.

Judgment affirmed.