### BANK AT HAMBURG v. FLYNN et al.

*(Circuit Court, D. Massachusetts. May 1, 1889.)*

1. **EVIDENCE—IDENTIFICATION OF PERSON.**
   A bill to recover the proceeds of certain notes alleged that such notes were stolen from complainant, a banking corporation in Germany, by one William C. Flynn; that he purchased drafts with the notes of B. S. & Co., and gave them to defendants, his brother and sister. There was evidence of Flynn's identity by the bank officers, by employes of an hotel in Germany, where he stayed, by B. S. & Co.'s cashier, by photographs, and by a police inspector, who had known Flynn for years. The record of a court in Germany of the conviction of one "William Flynn" for this larceny was also in evidence. *Held,* that it sufficiently appeared that William C. Flynn, defendants' brother, took part in the larceny, and that he bought the drafts in controversy with the notes stolen.

2. **DRAFTS—BONA FIDE HOLDER.**
   Where it appears that defendants were surprised to receive the drafts, and suspected something wrong about them; that they said to an officer that their brother had previously caused them a good deal of disgrace, and that the brother's letters accompanying the drafts were suspicious in character,—defendants cannot be held *bona fide* holders of the drafts.

3. **SAME.**
   Nor can it be said that the brokers of whom the drafts were bought, or those on whom they were drawn, are *bona fide* holders, so as to give defendants a good title, where it appears that the drafts had never been paid.

4. **EVIDENCE—RECORD OF FOREIGN COURT.**
   The record of the German court is admissible to show Flynn's conviction, but not to prove the facts on which it was based.

In Equity. Bill to recover possession of certain personal property.

*George P. Sanger,* for complainant.

*Horatio E. Swasey,* for defendants.

COLT, J. By this bill the complainant, a banking corporation located at Hamburg, Germany, seeks to recover possession of the proceeds of certain mark notes which were stolen from the bank on June 22, 1885. The bill alleges that the larceny was committed by three persons, one of whom was William C. Flynn, formerly of Boston, the brother of the defendants, Catherine J. Flynn and John M. Flynn; that William C. Flynn, on July 10, 1885, with a part of the proceeds of said larceny, bought two sight drafts from Brown, Shipley & Co., bankers, London, upon Brown Bros. & Co., Boston,—one for $3,000, payable to the defendant Catherine J. Flynn; and the other for $250, payable to the defendant John M. Flynn. The bill further alleges that William C. Flynn sent the drafts to his brother and sister as a gift, and that they are holders thereof without value. The prayer of the bill, as amended, is that the drafts, now in the custody of the clerk of this court, be canceled and destroyed, and that Brown Bros. & Co. pay to the complainant the amount of the purchase money received for said drafts, to-wit, $3,250. The firm of Brown Bros. & Co. are made parties to the bill. The defendants Flynn, in their answer, deny any personal knowledge of the alleged robbery, except upon information and belief. They admit the receipt of the drafts,

and they allege that they are *bona fide* holders and purchasers of the drafts for a valuable consideration, and without notice. The defendants have put in no evidence. From the evidence of the complainant it appears that Catherine J. Flynn and John M. Flynn received the drafts as a gift from their brother, and consequently without consideration.

The first ground of defense is that the complainant has not made out by sufficient proof that William C. Flynn was one of the persons who committed the larceny, or that he was the person who bought the drafts from Brown, Shipley & Co. in London. The fact that on June 22, 1885, between the hours of 11 and 12 o'clock in the forenoon, the bank was robbed by several persons of 200,000 marks, is proved beyond controversy. We have in evidence the record of the district court at Hamburg to the effect that one William Flynn was tried and convicted of this larceny. We have the testimony of the Hamburg bank officers, and of the employés at the hotel in Hamburg where Flynn stayed, also of the cashier of Brown, Shipley & Co., London, as to the identity of Flynn. To this is added the testimony of Police Inspector Houghton of Boston, who has known Flynn for many years. The identity of Flynn is proved by photographs; and, while the testimony is not entirely conclusive on this point, yet I am satisfied from a careful review of the whole evidence that the complainant has made out that one of the persons who took part in this larceny was William C. Flynn, the brother of the defendants, and also that he was the same person who several weeks afterwards purchased the drafts in controversy from Brown, Shipley & Co., of London, and that these drafts must have been purchased with the mark notes, or the proceeds thereof, which Flynn stole from the bank.

Being satisfied as to these facts, the question presents itself whether there is any legal defense to this bill. The defendants Flynn are not *bona fide* holders of these drafts for a valuable consideration. The testimony goes to prove that they were surprised at receiving them, and that in reality they suspected something was wrong about them; and they did not hesitate to say to the officer who called upon them that they had had a great deal of disgrace in times past from their brother, William. The letters from William to his brother and sister, which accompanied the drafts, are also of a very suspicious character. While these defendants are innocent of any wrong-doing, I cannot regard their legal position respecting these drafts as any different from what it would have been had their brother sent them the mark notes which he stole in place of the proceeds in the form of drafts. Nor can it be said that Brown, Shipley & Co. or Brown Bros. & Co. are *bona fide* holders for value of these drafts, and that the defendants get a good title through them. If the drafts had been paid, the situation would have been different. The rule applicable to negotiable securities cannot be invoked in this case to protect these defendants, because the drafts never passed into the hands of *bona fide* holders for value.

Certain objections were taken by the defendants to the admission of testimony. We will only consider the principal one. It is contended that the record of the conviction of Flynn is inadmissible in this suit.

A judgment is always admissible to establish the fact of the rendition of such judgment. The record of the Hamburg court was admissible to prove that a certain judgment was rendered against Flynn in a certain cause of action. So far it is competent evidence, though it is not admissible to prove the facts on which such judgment was rendered. 1 Greenl. Ev. §§ 537, 538. *Drummond* v. *Prestman*, 12 Wheat. 515.

The drafts in question have been deposited with the clerk by the defendants Catherine J. Flynn and John M. Flynn, to be held subject to the order of the court. The defendants Bullard and Curtis (Brown Bros. & Co.) have not answered to this bill, and no decree *pro confesso* has been entered against them. They may have considered that it was not necessary for them to answer till the issue was decided between the complainant and the defendants Flynn.