BANK OF LEIPER'S FORK v. THOS. B. JOHNSON et al.

Middle Section. September 14, 1929.

Petition for Certiorari denied by Supreme Court, December 7, 1929.

Cantrell, Meacham & Moon, of Chattanooga, and J. F. Eggleston, of Franklin, for appellant.

R. H. Crockett, of Franklin, for appellees.

DeWITT, J. The Bank of Leiper's Fork, situated in the village of Leiper's Fork, in Williamson county, sought by its bill in this cause to recover of the National Bank of Franklin and Herbert Pearson, its receiver, and of Thomas B. Johnson, Sandy Brown, E. T. Johnson, J. W. Moran and W. J. Polk, as guarantors, the amount of certain promissory notes aggregating in face value $6351.21 with interest, attorney's fees and protest fees. Upon the hearing the Chancellor decreed a recovery against the National Bank of Franklin and Herbert Pearson, receiver, but dismissed the bill as to the guarantors. From such dismissal the complainant has appealed.

The instrument under which it is sought to hold these appellees liable is as follows:

"This agreement witnesseth that:

"Whereas, the National Bank of Franklin, of Franklin, Tennessee, often times in the course of its business, has occasion to sell and does sell and transfer to the bank of Leiper's Fork, of Williamson county, Tennessee, negotiable notes and securities, without recourse upon it in law or equity, without guaranteeing the payment thereof, by the makers or other endorsers.

"And whereas, we the undersigned, who are stockholders and directors in the National Bank of Franklin, and mutually desire to promote and encourage these transactions, for the benefit of both banks, and to indemnify and protect the Bank of Leiper's Fork therein,

"Therefore, in consideration of the premises, we, the undersigned, jointly and severally obligate and bind ourselves to indemnify and save harmless the Bank of Leiper's Fork, of

Williamson county, Tennessee, against and from any loss on account of the failure of the makers or endorsers of any notes or securities, which it may take by assignment from the National Bank of Franklin, by and with the concurrence of its president and cashier, and we guarantee the payment of all such notes and securities at maturity, according to their terms and tenor.

"Witness our hands this the —— day of February, 1926.

"E. E. Green
"Thos. B. Johnson
"Sandy Brown
"E. T. Johnson.
"J. W. Moran
"L. W. Buford
"W. J. Polk"

After the execution and delivery of said instrument the National Bank of Franklin by its cashier E. E. Green, transferred to the Bank of Leiper's Fork the notes sued on, for the consideration of the face value of each note and interest from date to maturity. All of said notes bear the regular endorsement of the National Bank of Franklin guaranteeing the payment of them, excepting four, which bear no indorsement and from which, according to the undisputed testimony, such endorsement was omitted by inadvertence, and of which the National Bank of Franklin did guarantee the payment.

The defense, interposed first by demurrer and then by answer, is that none of the notes sued on is within the terms and provisions of said instrument of guaranty. This defense is divided into two propositions, and if either is sustained the assignments of error must all be overruled. These propositions are as follows:

1. That the contract of guaranty covered only notes transferred without recourse or guarantee of payment by the National Bank of Franklin; and therefore it does not include these notes sued on.

2. That the contract of guaranty was operative only upon notes transferred by and with the concurrence of the president and cashier of the National Bank of Franklin; that none of the notes sued on was transferred by and with such concurrence; and that therefore the contract does not cover them.

The Chancellor sustained both of these propositions. The evidence clearly shows that the complainant Bank of Leiper's Fork acquired the notes sued on from E. E. Green, then cashier of the National Bank of Franklin, without the affirmative consent of Thomas B. Johnson, its president, in due course and before maturity, for value, upon endorsement or oral guaranty of payment at

maturity, or upon demand; and that the makers of the notes have failed to pay them.

The antecedent circumstances were correctly determined and set forth by the Chancellor as follows:

"About 1920, the complainant, Bank of Leiper's Fork, and the National Bank of Franklin, entered into an arrangement whereby said defendant commenced the custom of, from time to time, transferring and delivering various and sundry undue notes or blocks of notes, held and owned by it, to complainant, Bank of Leiper's Fork, for which complainant paid the full face value, plus interest from date to maturity, under a definite and distinct oral agreement and arrangement, that said National Bank of Franklin would pay said notes and interest at maturity, or at any time before maturity on demand, together with interest on the aggregate of principal and interest to the date of payment; that said arrangement or plan continued until February, 1926, when the State Bank Examiner advised that complainant procure a written guaranty or contract of indemnity against loss on account of said transaction; and about the same time the Federal Bank Examiner suggested an arrangement whereby the payment of notes or securities which complainant bank might take from defendant National Bank of Franklin, without recourse upon it in law or equity, might be secured and guaranteed; and that defendant Thos. B. Johnson, president of defendant National Bank of Franklin, acting upon the suggestion of the Federal Bank Examiner, drew the written instrument of guaranty and indemnity, set out in the bill in this cause, had it executed by the individual defendants, and delivered it to E. E. Green, cashier of the National Bank of Franklin, who in turn delivered it to complainant bank; that thereafter, from time to time, sundry notes or blocks of notes, including the notes sued on, were transferred to complainant by endorsement, and under said oral guaranty of payment at maturity, or before maturity if demanded, except four notes sued on, as stated in the bill, were not endorsed, for some reason or other, but were delivered under said oral guaranty of payment, and that said written guaranty, signed by the individual defendants was held by complainant at the time of the delivery to it of the notes sued on, and same had not been revoked."

The instrument of guaranty must be interpreted according to its terms. The rule of strictissimi juris, enforced in respect of a contract of ordinary suretyship, does not apply. In Stearns v. Jones, 138 Tenn., 589, 199 S. W., 400, it is said:

"In this State it has been held, following Drummond v. Priestman, 12 Wheat., 515, 6 L. Ed., .712, in respect of a guaranty in a commercial transaction, that the guarantor shall be held to the full extent of his engagements, and that the rule in construing such an instrument is that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit. Bright v. McKnight, 1 Sneed, 158. This rule obtains in a number of jurisdictions and is based on the idea that it is important to uphold such guaranties, as helpful to trade and enterprise, which very often depend upon a combination of the labor and energy of those without means with the credit of those who have them."

Considering this instrument as an entirety, and not giving exclusive weight to any separate part; giving effect harmoniously to all its parts, and thus ascertaining its meaning,—we must sustain the interpretation of it insisted upon by the appellees. The preamble refers clearly to the sale and transfer of negotiable paper without recourse or guaranty of payment, and to the mutual desire to promote and encourage such transactions for the benefit of both banks and to indemnify and protect the Bank of Leiper's Fork therein. The National Bank of Franklin had sold a large amount of notes to the Bank of Leiper's Fork by endorsing them or guaranteeing the payment of them. This brought the liability of the National Bank of Franklin to an excess. This agreement of guaranty was made in order to continue the sale and transfer of notes from the one bank to the other without further liability.

It is plain that the kind of notes to be secured by the guaranty was that which is specified in the preamble. This conclusion is strengthened by the reference in the operative clause of the instrument to notes "which it (Bank of Leiper's Fork) may take by assignment from the National Bank of Franklin by and with the concurrence of its president and cashier." The use of the word, "assignment," is significant. It shows that the meaning was that the payment only of notes transferred without recourse or guaranty by the National Bank of Franklin was to be guaranteed. In the law of negotiable instruments "assignment" neither includes nor implies becoming in any way a party to the payment or responsible for the insolvency or default of the maker. Paine v. Smith, 33 Minn., 495, 24 N. W., 305. It means a transfer or conveyance of the right and title of the seller, and not an endorsement, although the term is frequently used to denote an endorsement. Andrews v. Whitehead (Tex.), 60 S. W., 800. The word "assign" implies no guaranty. Appeal of Perry, 22 Pa., 43, 60 Am. Dec., 63. In Evans v. Freeman, 142 N. C., 61, 54 S. E., 847, it appeared that the payee of a note wrote on the back of the instrument the words,

"I hereby transfer and assign all my right, title and interest in and to the within note." It was held that this was a qualified endorsement and equivalent to an endorsement without recourse. This principle underlies the decision in Chandler v. Jobe, 5 Lea., 591, in which it was held that in the absence of a guaranty or express contract for recourse, an assignee of a bid for land at a sheriff's sale has no recourse against the assignor in case of failure of title. See also 5 C. J., 969. Giving to the word "assignment" its literal meaning in this connection, the operative language of the guaranty is not as broad as is contended and the whole instrument is harmonized. It would be much more difficult to reach this conclusion if instead of "assignment" the words "endorsement" or "guaranty" had been used. It matters not that the cashier Green did violate the spirit and purpose of this contract by continuing to transfer paper with the endorsement or guaranty by his bank.

The transfer of paper without recourse or guaranty being the matter contemplated, how far did the obligation extend? It is clearly to be inferred that these guarantors intended, and the complainant bank must be deemed to have understood that they intended, that their obligation would apply only to paper on which the National Bank of Franklin had no liability; and that should it transfer paper upon its endorsement or guaranty, they would incur no liability on it by reason of their execution of the instrument in question. They obligated themselves by guaranty of payment only of any notes or securities which the Bank of Leiper's Fork might take by assignment from the National Bank of Franklin, by and with the concurrence of its president and cashier. The complainant accepted the instrument and purchased the notes sued on with full knowledge of this limitation.

It is undisputed that none of these notes was submitted to Mr. Johnson, the president, for his concurrence in the assignment and transfer thereof; that he knew nothing of these transactions until after the National Bank of Franklin went into receivership in October, 1926.

Could the Bank of Leiper's Fork presume that the concurrence of the president of the National Bank of Franklin accompanied the transfer of each of these notes? Our answer is two-fold:

First, such presumption could in no event apply to these notes, for they were transferred upon the endorsement or guaranty of the National Bank of Franklin, and they were not within the class of notes contemplated in the written contract.

Second, if the notes contemplated in the agreement had included those bearing endorsement or guaranty, the class would have been further limited to notes transferred with the concurrence of the president and cashier; and unless there was an implied concurrence

on the part of the president, these notes were still not within the class contemplated.

The cashier was without power to bind these guarantors by transferring paper lacking endorsement or guaranty without submitting such transaction to the president and securing his approval. The complainant bank knew this and knew that these guarantors were entitled under the instrument to the protection of the judgment of the president before their obligation would attach to any note transferred. The cashier of the National Bank of Franklin could bind his bank by its endorsement or guaranty, but he could not bind these guarantors except by complying with the plain terms of their undertaking. It is the universal rule that in case of a power given to joint donees all must join in executing it, and especially where the power is discretionary. 21 R. C. L., 787. The power conferred by the instrument in question was not a power coupled with an interest, but was based upon personal confidence, and hence, under the law, could only be exercised by both of the donees of the power. Fitzgerald v. Standish, 102 Tenn., 383, 52 S. W., 294; Deaderick v. Cantrell, 10 Yerg., 263; Armstrong v. Park, 9 Humph., 195; Belote v. White, 2 Head, 703; Murdock v. Leath, 10 Heisk., 176.

It is insisted, however, that the act of Mr. Johnson, the president, in delivering this executed instrument to the cashier for use in making such transactions constituted a concurrence therein, although none of them was ever submitted to him. We are unable to sustain this proposition. In the first place, the concurrence related to each one of future transactions which might materially affect the guarantors, and this fact was ever before all the parties. Of course the guarantors did not intend to guarantee the payment of any worthless paper. To interpret the delivery of the instrument to Green and then to the complainant as in itself a concurrence would be to deprive these guarantors of the very protection of the affirmative approval, or act of binding, by the president, which the instrument manifestly afforded. There could be no reasonable misunderstanding of this on the part of the complainant. Again, the very meaning of the word, "concurrence," implies an affirmative act, an act in conjunction with another or others, a joint operation of mind and will upon the same subject, a joint approbation. See Webster's International Dictionary. Something more than a mere acquiescence or silent submission is implied. 12 C. J., 393. This vital element is wanting in this case.

An estoppel is claimed because Mr. Johnson, after these notes had been transferred and after the National Bank of Franklin had failed, attended a meeting of the stockholders of the Bank of Leiper's Fork and explained to the stockholders that his purpose

in drafting the agreement was to protect all parties concerned. It does not appear that he said anything by way of approval of the previous transfer of the notes; and it must be borne in mind that the transfer of these notes had been by endorsement or guaranty of payment by the National Bank of Franklin. Nor does it appear that by anything that he said or did the complainant was induced to alter its position for the worse. No estoppel could arise out of such facts.

It results that all of the assignments of error must be overruled, and it will be so ordered. The decree of the chancery court is affirmed. The costs of the appeal will be adjudged against the appellant and the sureties on its appeal bond.

Faw, P. J., and Crownover, J., concur.