## MANRY *v.* WAXELBAUM COMPANY.

1. This court can not consider an assignment of error based upon a refusal to allow a witness to answer certain questions, when it does not appear what the answers would have been.

2. Portions of the answer which were stricken attempted merely to construe a written contract, which was a matter for the court; and the allegations of fraud contained in certain other portions were too loose and general to raise an issue of fraud, there being no denial of the execution of the instrument sued on.

3. The defendant made the following contract with the plaintiffs: "For and in consideration of the sum of one dollar in hand paid, and the receipt of which is hereby acknowledged, I, J. H. Manry, do hereby guarantee the prompt payment of all accounts and notes given in settlement for goods purchased by G. W. Grubbs of Bethel, Georgia, from the Waxelbaum Company of Macon, Georgia, to the extent of four hundred dollars. Be it further understood that I, J. H. Manry, shall be at liberty to withdraw this guarantee at any time, provided that the account of G. W. Grubbs is paid." *Held,* that this was a continuing guaranty.

4. It was not necessary for the creditor, before extending credit to the principal debtor on the faith of such a guaranty, to notify the guarantor of the acceptance of his undertaking.

5. There was no error in directing a verdict against the defendant for four hundred dollars, but it was error to direct that interest be added at the rate of eight per cent. per annum from the maturity of the indebtedness

of the principal debtor. The plaintiffs were entitled only to interest at seven per cent. from the date of the filing of the suit, no demand having been made prior to that time. Direction is given that the verdict and judgment be amended as above indicated, and that the costs of this writ of error be taxed against the defendant in error.

Submitted May 10,—Decided June 14, 1899.

Complaint. Before Judge Sheffield. Randolph superior court. November term, 1898.

*Arthur Hood*, by *Harrison & Bryan*, for plaintiff in error.
*W. C. Worrill*, contra.

Cobb, J. The Waxelbaum Company brought suit against Manry upon an instrument of which the following is a copy:

"Georgia, Randolph County. For and in consideration of the sum of one dollar in hand paid, and the receipt of which is hereby acknowledged, I, J. H. Manry, do hereby guarantee the prompt payment of all accounts and notes given in settlement for goods purchased by G. W. Grubbs of Bethel, Georgia, from the Waxelbaum Company of Macon, Georgia, to the extent of four hundred dollars. Be it further understood that I, J. H. Manry, shall be at liberty to withdraw this guarantee at any time, provided that the account of G. W. Grubbs is paid.
[Signed]    J. H. Manry."

It was alleged in the petition, that G. W. Grubbs was dead, and that his estate was insolvent, and that at the time of his death he was indebted to the plaintiff for goods bought in a sum exceeding four hundred dollars. The defendant filed an answer in which he alleged, that goods to the amount of four hundred dollars were sold Grubbs by the plaintiff on the faith of defendant's guaranty, and that these goods were paid for by Grubbs; that defendant only intended by the guaranty to be responsible for this amount, and did not intend that his contract should be a continuing guaranty; that if the written instrument given plaintiff by him contains any such stipulation, it is a fraud on him and contrary to his undertaking; that defendant is advised that the estate of Grubbs is insolvent, but believes there will be something in the estate to pay on all notes due and owing by the estate; that defendant owes the plaintiff nothing on the contract sued on. The plaintiff de-

murred to so much of the defendant's answer as sought to deny liability on the contract, upon the ground that it was insufficient in law; and to that part of the answer which sought to set up fraud, upon the ground that the same set forth no specific charges of fraud, and was insufficient in law. The court sustained the demurrer, and the defendant excepted. It appears from the evidence that Grubbs at the time of his death owed plaintiff $477.23, $35.42 of which was on open account, and the balance consisted of two promissory notes for $241.81 and $200, due October 1 and 15, 1897, respectively. It further appears that before selling Grubbs any goods the plaintiff had a correspondence with him, which culminated in a proposition from plaintiff to accept Manry as Grubbs' guarantor. This proposition was satisfactory to both Grubbs and Manry, and the instrument above quoted was sent by Manry to the plaintiff some time during the latter part of January, 1896. No notice of the acceptance of this guaranty was given by plaintiff to Manry, and no notice of a desire to withdraw the same was ever sent by him to plaintiff. Since the date of the execution of the guaranty Grubbs paid the plaintiff $253.52. The plaintiff sold the goods, for the payment of which suit is brought, entirely upon the faith of the promise of Manry to become responsible therefor. At the conclusion of the evidence the court directed the jury to return a verdict for the plaintiff for $400 principal, with interest from October 15, 1897, at eight per cent. per annum. The defendant brings his bill of exceptions to this court, complaining that the judge erred in sustaining the demurrer to those parts of the answer above referred to, and in directing a verdict in favor of the plaintiff, and in allowing interest on the sum sued for at the rate of eight per cent. per annum. The bill of exceptions also assigns error upon the refusal of the court to permit the defendant to answer certain questions propounded to him by his counsel, but what would have been the answers to these questions does not appear.

1. The question of practice ruled in the first headnote has been repeatedly ruled by this court, one of the more recent cases being *Cook* v. *B. & L. Ass'n*, 104 *Ga.* 814.

2. There was no error in striking those parts of the de-

fendant's answer which were the subject of the plaintiff's demurrer. The parts stricken sought to construe the instrument sued on. What was the meaning of this instrument was a question to be decided by the court, and therefore the construction which the defendant relied upon was not the proper subject for plea. As to the allegations of fraud contained in the answer, it is sufficient to say that they did not specifically deny the execution of the instrument sued on, but alleged, in effect, that the defendant did not intend to make a continuing guaranty, and that if the instrument really contained any such a stipulation, it was a fraud on him. These allegations were entirely too loose and general to raise an issue of fraud. They nowhere allege that the defendant was overreached in any way, or that any misrepresentations were made to him by the plaintiff whereby he was induced to sign the instrument. The words of the instrument are plain and unambiguous, and there is no allegation that the defendant was ignorant of the meaning of the ordinary English words in which it is couched.

3. It is contended that the contract sued on in this case is one of suretyship and not of guaranty. The two terms are frequently used interchangeably, and for this reason a great confusion has arisen in the books as to the proper distinction to be drawn between them. A guarantor is a surety in the sense that he obligates himself to pay the debt of another, but at the same time there is a very clear distinction between them. One difference is pointed out by our code. It says that a contract of suretyship "differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." Civil Code, § 2966. See also opinion of Bleckley, Judge, in *Wright* v. *Shorter*, 36 *Ga.* 76. In brief, we understand the difference to be this: A surety binds himself to perform if the principal does not, without regard to his ability to do so. His contract is equally absolute with that of his principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand, does not contract that the principal will pay, but simply that he is able to do so; in other words, a guarantor warrants nothing but the solvency of the principal. Before an action can be maintained

against a guarantor, therefore, it must be shown that the principal is unable to perform. The surety says to the creditor, if your debtor will not pay, I will pay. The guarantor says to him, proceed first against the principal, and if he should not be able to pay, then you may proceed against me. It has been said that there is no instance in the books of a guarantor contracting jointly with his principal. Much has been written upon this subject, but we think the above expresses the true distinction between the two classes of contracts. See Reigart v. White, 52 Pa. St. 438; McMillan v. Bank, 10 Am. L. R. 431, and notes; Kramph v. Hatz, 52 Pa. St. 525; notes to Birdsell v. Heacock, 18 Am. L. R. 751; 9 Am. & Eng. Enc. L. (1st ed.) 68, and cases cited. Measured by these rules, we think it perfectly clear that the contract under consideration in this case was one of guaranty. It was entirely separate from the obligation of the principal debtor, was made for a consideration flowing to the maker, and it can be fairly inferred from the terms of the instrument that Manry only intended to bind himself in case Grubbs was not able to pay. The defendant in this case would be bound in either case, but in a strict sense he was a guarantor not a surety.

It is further insisted, that even if the obligation undertaken by the defendant was a guaranty, it was not a continuing one, but was to cease when Grubbs paid the first indebtedness he incurred amounting to four hundred dollars, and that all subsequent credits were extended to him solely on his own promise to pay. The intention of the parties must be gathered from the instrument and the circumstances surrounding its execution. The correspondence which led up to the execution of this guaranty was all between the plaintiff and Grubbs, and hence can throw no light on Manry's intention. At the time of the execution of this instrument Grubbs owed the plaintiff nothing, for it had persistently refused to extend credit to him unless he would procure the defendant as his guarantor; and hence the instrument does not refer to any indebtedness existing at the time of its execution. Instruments of this character should have a liberal construction in order to arrive at the true intention of the parties. Was it the intention of

Manry to bind himself by a continuing contract of guaranty?
The language of the instrument seems to indicate that it was.
He obligates himself to pay promptly "all accounts and notes
given in settlement for goods" purchased by Grubbs from the
plaintiff, "to the extent of four hundred dollars." Not to pay
any certain notes and accounts within any fixed and definite
time, but any and all notes and accounts that might be owing
at any time. If it had been the intention of the defendant to
restrict his liability to any particular transaction between the
plaintiff and Grubbs, why did he not stipulate that he would
not be bound after the first credit to the amount of the guar-
anty was extended, or after a certain time? There is abso-
lutely nothing in the language referred to which tends in any
manner to restrict the obligation to the first credit amounting
to four hundred dollars, but the most reasonable conclusion to
be drawn therefrom is that the guaranty was a continuing one.
Moreover, the defendant stipulates that he shall be at liberty
to withdraw the guaranty at any time, provided the indebted-
ness of Grubbs is paid. Why stipulate for a withdrawal, if the
contract was not a continuing one? What was the necessity
for stipulating to withdraw an instrument which had become
void by the payment by Grubbs of the amount fixed in the
contract? The use of this language seems to indicate that
Manry recognized that he would be bound for any credits to
the extent of four hundred dollars until the contract was with-
drawn by him. Taking the instrument as a whole, we are sat-
isfied that it expresses an intention on the part of the defendant
to make a contract by which he would be bound for any credits
which might be extended to Grubbs, to the amount of four
hundred dollars, until such time as he saw proper to, and could
under his contract, notify the plaintiff that he would no longer
be bound to pay any amounts which Grubbs might owe to it.

In a case of this character adjudicated cases do not render
much assistance, but an examination of some of the cases where
similar instruments were construed will show that the ruling
we make is in harmony with the authorities. In Wheelan v.
Keegan, 7 Irish Com. Law Rep. 544, suit was brought on the
following instrument: "I hereby guarantee the payment of

any amount of goods you may give to John Keegan, of William street, not exceeding 40 pounds sterling." The defendant pleaded payment by the principal debtor. It appeared that the plaintiff had sold cattle to Keegan from time to time, for which he had received payment; but the amount claimed by plaintiff was due to him by Keegan in respect of subsequent dealings. It was held that the contract sued on was a continuing guaranty, and that the plaintiff "was entitled to recover to the extent thereof." In the case of Rapelye *v.* Bailey, 5 Conn. 149, the defendant addressed a letter to the plaintiffs, as follows: "My brother Roswell is wishing to go into business in New York, by retailing goods in a small way. Should you be disposed to furnish him with such goods as he may call for, from 300 to 500 dollars worth, I will hold myself accountable for the payment, should he not pay, as you and he shall agree." It was held that this letter contained a continuing guaranty. In discussing the question, Hosmer, C. J., says: "The words of the contract ought to be taken as strongly against the defendant as the sense of them will admit. If a limitation was intended as to time, or manner of delivery, why was it not specified, as was the limitation relative to the amount?" In Mason *v.* Pritchard, 12 East, 227, it was held that a guaranty by the defendant to the plaintiff "for any goods he hath or may supply W. P. with, to the amount of 100 pounds sterling," was a continuing guaranty to that extent for any goods supplied until the credit was recalled. In Crist *v.* Burlingame, 52 Barb. 351, it was held that the following letter contained a continuing guaranty: "I will be and am responsible for any amount for which A. Burlingame may draw on you, for any sum not to exceed $1,500, on condition of your acceptance of the same." In Rindge *v.* Judson, 24 N. Y. 64, it was held that "a contract to be 'accountable that B will pay you for glass, paints, &c., which he may require in his business, to the extent of fifty dollars,' is a continuing guaranty. The limitation is not of the credit to B, but of the extent of the guarantor's liability." To the same effect as the decisions above referred to, see the following: Merle *v.* Wells, 2 Camp. 413; Scott *v.* Moore, 24 Ala. 489; Hotchkiss *v.* Barnes, 34 Conn. 27;

Crittenden v. Fiske, 46 Mich. 70; Boehne v. Murphy, 46 Mo. 57; Bent v. Hartshorn, 1 Met. 24; Grant v. Ridsdale, 2 Harr. & J. 186; Gates v. McKee, 13 N. Y. 232. Each case must of course stand upon the peculiar phraseology of the contract under consideration, but the cases above cited serve to show that where an absolute promise is made to become responsible for a certain amount, with no limitation as to time, and there is nothing in the circumstances surrounding the execution of the contract to evince a contrary intention, it will be presumed that the promise was to continue until revoked, and the promisor will be held liable to the extent of his guaranty notwithstanding the principal may have, during the existence of the contract, contracted debts to an amount equal to or greater than the sum named in the guaranty, and paid the same.

4. Was the defendant entitled to notice from the plaintiff of the acceptance of his guaranty? The evidence shows that no such notice was given. This question was under consideration by this court in the case of Sanders v. Etcherson, 36 Ga. 404. In that case suit was brought on an undertaking in writing by the stockholders of a certain railroad company, to "guarantee the payment of all the debts heretofore made and now outstanding against said company," and they bound themselves "personally for the payment of the same, to all of the creditors of the company who will not sue, but indulge the company upon their claims for ten months from this time; we to be liable to the creditors for the whole amount, but as between each other in proportion to the stock owned by each." It was held that a creditor who complied with the terms prescribed was entitled to the benefit of the provisions of the guaranty, without having notified the stockholders of the acceptance of their proposition. Walker, J., in the opinion says that in some cases notice of acceptance would be necessary; but that "where the undertaking of the guarantor is positive, and the amount he agrees to guaranty is fixed, and the guaranty is to take effect on the doing or forbearing some definite thing as its consideration, then no notice of acceptance is necessary." We think this case is controlling in the present one; and it will be found to be in harmony with the great weight of authority.

See 2 Parsons, Cont. 14; 9 Am. & Eng. Enc. L. 79, 80, and numerous cases cited in each. It is true that a contrary ruling was made in the case of *Claflin* v. *Briant*, 58 *Ga.* 414, but that case may be distinguished on its peculiar facts, and if not, the ruling made in the 36 *Ga.* supra, antedating that made in the 58, is controlling.

5. The uncontradicted evidence in the case showing that Grubbs at the time of his death was indebted to the plaintiff in a sum exceeding four hundred dollars, and that his estate was insolvent, and that the defendant had not withdrawn his guaranty, there was no error in directing a verdict in the plaintiff's favor for that amount. We think, though, it was error to allow interest on this amount at eight per cent. from October 15, 1897. The defendant by his contract bound himself absolutely to pay four hundred dollars, and no more. This, therefore, was the measure of his liability under the contract, and he could be required in no event to pay more than this until demand had been made upon him and he had refused to pay the amount due. As there was no evidence of any demand, interest should be allowed from the date of the filing of the suit, at the rate of seven per cent. per annum. Direction is given that the verdict and judgment be amended so as to allow interest at seven per cent. per annum on the principal sum recovered, from the date of the filing of the suit, and that the costs of bringing the writ of error to this court be taxed against the defendant in error.

*Judgment affirmed, with direction.     All the Justices concurring.*