## CARSON v. HURST & COMPANY.

The instrument sued on, when construed as a whole, did not limit the amount of credit which was to be extended by the obligees to the person for whose benefit it was executed, but only limited the extent of the obligor's liability.

FEBRUARY 27, 1912.

Complaint. Before Judge Merrill. Tift superior court. December 6, 1910.

Hurst & Company brought suit against Briggs Carson for $2,000 and interest thereon, for goods sold and delivered to Keith Carson in pursuance of the following instrument:

"Tifton, Ga., March 4, 1907. To Mess. John E. Hurst & Co. In consideration of your delivering to Keith Carson all the goods which he, personally or by his agent or agents, may purchase or order of your firm from time to time, to the extent of the sum hereinafter stipulated, I do hereby guarantee and bind myself to the punctual payment of the debt or debts thereby created, as fully as if purchased on my own personal account. Provided, however, that the amount of the indebtedness for goods so bought shall not exceed the sum of Two Thousand ($2,000.00) Dollars. It is understood, however, that as he may make payment and reduce the amount of his indebtedness, he may from time to time purchase again, so that my liability shall at no time exceed the sum of Two Thousand ($2,000.00) Dollars; and the acceptance of notes or drafts from him shall in no way impair or weaken the validity of this guarantee, which is to be in full force and virtue until revoked in writing. And should the amount or amounts purchased as above stipulated be not paid by him at maturity, you shall have the right to proceed against me for its recovery, without any further proceeding or action against him; and I waive homestead and all other exemptions on both real and personal property as to the guarantee above mentioned. [Signed] Briggs Carson.

"Witness: Keith Carson."

It appeared from the petition that the plaintiffs, after the execution of this instrument, sold to Keith Carson goods to the amount of $3,379, and that Keith Carson was unable to pay the debt for which the action was brought. The defendant by answer set up that he was not liable on the guaranty contained in the instrument, for

the reason that by the terms thereof the amount of goods to be sold by the plaintiffs to Keith Carson was limited to $2,000, and that plaintiffs had violated this term of the guaranty by selling goods to Keith Carson in excess of that amount. At the trial the defendant admitted the execution of the instrument sued on, and assumed the burden of proof. The only evidence introduced was that of the defendant, who testified: "The goods sold by John E. Hurst & Company to Keith Carson, after the execution of the instrument sued on, were largely in excess of the amount named in the contract, and such credit was extended without my knowledge or consent." The court directed a verdict for the plaintiffs for $2,000, besides interest at 7 per cent.; and the defendant excepted.

*Fulwood & Murray* and *Cobb & Erwin,* for plaintiff in error.

*John R. L. Smith* and *W. A. Thompson,* contra.

Fish, C. J. (After stating the facts.) This case must be decided upon the construction of the instrument sued on, and the facts which appear from the petition and the evidence of the defendant that the amount of goods sold under the guaranty was in excess of $2,000, and that this was done without the knowledge or consent of the defendant. What is the proper construction of the guaranty? The contention of the plaintiffs below was, that, under the terms of the instrument, $2,000 was the limit of the liability of the guarantor, and that the right of the plaintiffs to extend credit to Keith Carson was unlimited; while the contention of the defendant below was, that, in accordance with the language of the instrument, $2,000 was the limit of the credit to be extended by the plaintiffs to Keith Carson, as well as the limit of the defendant's liability. There being no evidence of the circumstances leading up to the execution of the instrument, or attendant thereon, the issue between the plaintiffs and the defendant as to the meaning of the instrument must be determined by reference to it alone, without aid from any extrinsic source. A guaranty is like all other contracts, in that the intent of the parties thereto is to govern; but, as was said in *Hargroves* v. *Cooke,* 15 *Ga.* 321, 325, "the courts will not be strict in the construction of such instruments (per Tindal, C. J., in Newberry *vs.* Armstrong, 4 Bingham, 201, 19 E. C. L. R. 55), but they are 'to be taken as strongly against the party giving the guarantee as the sense of them will admit.' Mason *vs.* Pritchard, 12 East, 227." To the same effect see Drummond

*v.* Prestman, 12 Wheat. 515 (6 L. ed. 712); Rapelye *v.* Bailey, 5 Conn. 149 (13 Am. D. 49); Bright *v.* McKnight, 1 Sneed (Tenn.) 168. In 20 Cyc. 1424, it is said: "If after the application of the general rules governing the interpretation of contracts there still remains an ambiguity and the contract admits of two fair interpretations, one for and one against the guarantor, the authorities differ as to which of such interpretations shall be chosen. It has been affirmed in the strongest terms that if there is room to doubt what the intention of the guarantor was, or if uncertainty is to be found on the face of the instrument of guaranty, words used are to be accepted in the strongest sense against the guarantor; and this position is supported by the weight of authority [citing a number of American and English cases which sustain the text]. But some authorities take a contrary view. It would seem, however, that the difference between those courts that support the doctrine of liberal construction of the contract in favor of the creditor, and those courts which favor a strict interpretation in favor of the guarantor, is generally with reference to the point at which the rule of *strictissimi juris* is to be applied. It is settled that when the intent of the guarantor has been ascertained or the terms of the guaranty are clearly defined, the liability of the guarantor is absolutely controlled by such intent and is never to be extended beyond the precise terms." In support of the rule of strict construction against the guarantor some of the courts holding to that view have said that "no injury can result from this doctrine, as it is in the power of guarantors to make their obligation dependent upon notice, demand, or any other condition they see proper for their own protection and safety." In 14 Am. & Eng. Enc. Law (2d ed.), 1143, it is said: "The great weight of authority, however, is against the two conflicting views herein mentioned. A very large majority of the decisions hold that guaranties are governed by the same rules of construction that control in the case of contracts generally. The contract of guaranty is not to be construed most favorably for the guarantor, nor most strongly against him. In guaranties the terms used and the language employed are to have a reasonable interpretation, according to the intent of the parties as disclosed by the instrument read in the light of the surrounding circumstances and the purposes for which it was made; and the words used in the guaranty are to be construed in their ordinary and popular sense,

unless by the known usage of trade they have acquired a peculiar meaning."

In *Small Co.* v. *Claxton*, 1 *Ga. App.* 83 (57 S. E. 977), it was held: "Where the terms of a written contract of guaranty, or suretyship, are ambiguous, they will be construed most strongly against the maker of the contract." After an examination of many authorities, we are of the opinion that the general rule deducible therefrom is, that words of limitation in a guaranty, in the absence of clear intention in the instrument to the contrary, are to be construed as intending to limit the liability of the guarantor, and not to limit the extent of credit to be given, thereby creating a condition the breach of which relieves the guarantor. Rindge v. Judson, 24 N. Y. 64; Tootle v. Elgutter, 14 Neb. 158 (45 Am. R. 103); Curtiss v. Hubbard, 6 Metc. 186; Laurie v. Scholefield, L. R. 4 C. P. 622; Clagett v. Salmon, 5 Gill & J. 314; Pratt v. Matthews, 24 Hun, 386; Parker v. Wise, 6 M. & S. 239; Schinasi v. Lane, 103 N. Y. Supp. 127, affirmed by the Court of Appeals (85 N. E. 1116). As we have seen, the doctrine of strict construction of a guaranty as against the guarantor was early adopted by this court. *Hargroves* v. *Cooke*, 15 *Ga.* 321. And that such construction will be adopted when the contract of guaranty is ambiguous was held by the Court of Appeals in *Small Co.* v. *Claxton,* supra. As to the contract in the present case, the most that can be said in behalf of the guarantor is that it is ambiguous. The varying phraseology used in instruments of the character of the one now under consideration differentiates each in a greater or less degree from most others, and therefore each must, to a large extent, stand upon its own language. However, cases dealing with instruments closely similar are helpful in reaching a conclusion in a given case. We will therefore call special attention to some of the decisions construing instruments quite similar to the one in hand. In Merle v. Wells, 2 Campb. 413; the defendant gave to the plaintiff the following instrument: "'I have been applied to by my brother, William Wells, jeweller, to be bound to you for any debts he may contract, not to exceed one hundred pounds (with you) for goods necessary in his business as a jeweller. I have wrote to say by this declaration I consider myself bound to you for any debt he may contract for his business as a jeweller, not exceeding one hundred pounds, after this date." Lord Ellenborough said: "I think the defendant was

answerable for any debt, not exceeding 100 *l.,* which William Wells might from time to time contract with the plaintiffs in the way of his business. The guarantee is not confined to one instance, but applies to debts successively renewed. If a party means to be surety only for a single dealing, he should take care to say so. By such an instrument as this, a continuing suretyship is created to the specified amount." In Parker *v.* Wise, 6 M. & S. 239, a bond was given by defendant as surety for W. and W., with a condition, reciting that obligees were bankers, and W. and W. paper manu-facturers, and had overdrawn their account with obligees 4822 *l.,* and, in order to enable them to carry on their business, had ap-plied to obligees to allow them for a time to overdraw such further sums as they should require, so as that the same, together with the 4822 *l.,* should not exceed in the whole at any one time 5000 *l.,* which obligees had agreed to do; and the condition was for the payment by W. and W. and defendant, or any of them, of the sum of 4822 *l.,* and also such further sums as obligees should or might thereafter advance to W. and W. in the course of their busi-ness, not exceeding in the whole 5000 *l.* It was held that the bond was not avoided by the obligees having allowed W. and W. to over-draw to an amount, together with the 4822 *l.,* exceeding 5000 *l.,* and therefore defendant's plea to that effect was ill pleaded, for the restrictive words in the recital were not to be construed as condi-tional that if obligees exceeded the amount the bond should be void. Lord Ellenborough, C. J., said: "Had the surety, as it has been argued, intended to impose a condition on his part that the bankers should not advance beyond 5000 *l.,* in order to make sure that the manufacturers should not, by an indefinite supply of funds, be led into a more extensive course of dealing than he contem-plated, it would have been easy to have provided for such a condi-tion, by stipulating that the obligation should be void if any further advance were made." In Laurie *v.* Scholefield, L. R. 4 C. P. 622, the facts were: R. & Co. being about to open an account with the Union Bank, the defendant and one Black signed the following guarantee: "In consideration of the Union Bank agreeing to ad-vance and advancing to R. & Co. any sum or sums of money they may require during the next eighteen months, not exceeding in the whole 1000 *l.,* we hereby jointly and severally guarantee the payment of any such sum as may be owing to the bank at the ex-

piration of the said period of eighteen months." 1000 *l.* was placed by the bank to the credit of R. & Co.'s drawing account, and R. & Co. were debited with 1000 *l.* in a loan account. R. & Co. from time to time drew cheques against and paid money to the credit of their drawing account. Over 1000 *l.* was thus paid in by R. & Co., and they were not debtors on the drawing account when it was finally closed. The loan account remained unaltered. The bank sued the defendant for 1000 *l.* on the guarantee, and after the commencement of the action Black paid the bank 500 *l.* in discharge of his liability. The defendant did not plead this payment. It was held that the guarantee was a continuing one, and that the defendant's liability was not discharged by the payments made by R. & Co. In his concurring opinion, Smith, J., said: "The words, ' not exceeding in the whole 1000 *l.,*' do not amount to a condition. They were intended to express the limit of the defendant's liability, and not to prohibit the bank from making any further advances to Russell & Co. If it had been intended that no advances beyond the 1000 *l.* should have been made during the currency of the suretyship, I should have expected more precise words. That is the view which the court took of a similar document in Parker *v.* Wise, 6 M. & S. 239." In Curtiss *v.* Hubbard, 6 Metc. 186, the guarantee was as follows: "Whereas Messrs. Curtiss & Merriam have at my request consented to sell goods to my son, William Hubbard, on a credit of six months; now in consideration thereof and of one dollar to me paid by them, I guaranty the payment of a bill of merchandise purchased of them by said William under date of the 10th of July inst., and of all further sums which he may owe them for goods which they may sell him as aforesaid, provided that the whole amount which he may owe them at any one time shall not exceed eleven hundred dollars; it being the understanding that I am in no event to be liable for more than that sum." It was held that the $1,100 was not a limitation of the amount of credit which could be extended to William, but was only a limit of the liability of the guarantor. In Pratt *v.* Matthews, 24 Hun, 386, the statement is as follows: "On or about 10th January, 1877, the defendants executed to McKenny & Allbright the writing sued on, in which they agreed to and with said firm that Pope, ' who has purchased or is about to purchase anthracite coal of said firm, shall and will pay said firm, at such time or times and at such prices as

may be agreed upon between said firm and said Pope, for all coal, that may be delivered to him, up to the first day of January, 1878, and in default of his so doing we agree to pay for the same, provided the amount so in default shall not at any time exceed the sum of $1000.'" It was held that there was no limitation upon the amount of credit to be extended to Pope, but that the limitation was as to the amount of the liability of the guarantor. In Taussig *v.* Reid, 145 Ill. 488 (32 N. E. 918, 36 Am. St. R. 504), the instrument sued on was as follows: "For value received, I hereby guaranty the prompt payment at maturity of any indebtedness owing to Reid, Murdock & Fisher by Mrs. Mathilda Zuckerman . . for goods purchased, or which may be purchased hereafter of them, to the amount of fifteen hundred dollars." It was held that the amount stated in the guaranty was a limitation upon the liability of the guarantors, and not a limitation upon the credit to be extended to Mrs. Zuckerman. In Schinasi *v.* Lane, 103 N. Y. Supp. 127, the guaranty was as follows: "I hereby guaranty any bills the Retail Cigar & Tobacco Dealers Association of New York may contract with you from this date until January 1st, 1906, unless I notify you to the contrary, providing the amount of credit shall not exceed $5,000 at any one time." It was held that the $5,000 was the limit of the liability of the guarantor, and not of the amount of credit to be extended to the principal, and that the guarantor was not discharged by the extension of credit of more than $5,000. The court said: "The defendant did not intend by his contract of guaranty to deprive the company of obtaining credit. He merely intended that his liability should not exceed $5,000. The language in which the guaranty was made was general, and, but for the clause with respect to the $5,000, would have rendered the defendant's liability unlimited. . . The contract having been drawn by the defendant should, if necessary to protect the plaintiffs and accomplish the object of the guaranty, be interpreted most strongly against him if it be ambiguous. The interpretation for which he now contends would make the contract misleading, and it is not the understanding that an ordinary person would glean from reading it." Four of the judges of the Supreme Court concurred in the opinion; one dissented. The case was affirmed in the Court of Appeals (85 N. E. 1116), by four of the Justices, the other three dissenting. In Tolerton &c. Co. *v.* Barck, 81 Minn.

470 (84 N. W. 330), the defendant promised and guaranteed the payment of any sum of balance which then existed or might thereafter be contracted on account of goods and merchandise sold and delivered by plaintiff to a named firm of merchants, "provided such balance does not exceed one thousand dollars." The sum or balance due when the firm failed in business was something over $1,300, and, because it exceeded the amount mentioned in the guaranty, it was contended by the defendant that he was released from liability. It was held that the amount named in the instrument was a limitation upon the liability of the guarantor, and not upon the amount of credit to be extended to the firm. In Fisk *v.* Stone, 6 Dak. 35 (50 N. W. 125), the guaranty from the defendant to the plaintiff was as follows: "If you will send her [Mrs. Hollenbeck] such goods as she may order, not exceeding $300 due you at any one time, I will guaranty that you are paid in full." It was held that it was not a breach of the terms of the guaranty, so as to relieve defendant from his liability for $300, that plaintiff gave Mrs. Hollenbeck credit for more than that amount. In Tootle *v.* Elgutter, supra, the action was upon the following guaranty: "Please let Mr. John Newman have credit for goods to the amount of one hundred dollars, and for the payment of which I hold myself responsible." It was held to be a continuing guaranty, and the limitation therein was as to the amount for which the guarantor would hold himself liable, and not as to the credit to be given.

Considering the entire contract upon which this action is founded, and the fact that the defendant did not insert therein a stipulation that he should be relieved from all liability in the event that the plaintiffs should extend credit to Keith Carson to an amount exceeding $2,000, and in view of the rulings to which we have referred, made by courts of the highest respectability in construing contracts very similar to the one now before us, we have confidently reached the conclusion that the judge of the trial court properly construed the contract in question as limiting the liability of the guarantor, and not the amount of credit to be extended. Accordingly, the verdict against the defendant was properly directed.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*