31479. CARTWRIGHT v. FARMERS BANK OF TIFTON.

848

Decided March 6, 1947.

*C. A. Christian,* for plaintiff in error.

*Robert R. Forrester, R. D. Smith,* contra.

SUTTON, P. J. (After stating the foregoing facts.) ■ The plaintiff's petition set out a cause of action, and the trial judge did not err in overruling the demurrer to the petition.

■ The plaintiff's case is based on the theory that the writing signed by the defendant, a copy of which is attached to the petition and was also introduced in evidence, is a contract of suretyship and obligated the defendant as a surety on the note sued on. A copy of this writing is as follows: "The Farmers Bank of Tifton, Tifton, Georgia. February 28, 1938. The Farmers Bank of Tifton, Tifton, Georgia. Gentlemen: Regarding the two notes given you today by J. L. Cartwright, one of which I have endorsed, I wish to state that I will see that whenever a payment is made on the note which I have endorsed, that a like payment will be made on the one I have not endorsed. It is understood that either or both of said notes may be paid before maturity and thereby stop interest. Yours very truly, H. L. Cartwright."

The defendant, H. L. Cartwright, signed one of the notes and was jointly and severally liable thereon to the bank with his son, and the above instrument signed by him states that he will see that, whenever a payment is made on the note which he had endorsed, a like payment would be made on the note that he had not endorsed. The jury was authorized to find from the evidence that the execution of this paper and the two notes to the bank constituted one and the same transaction, and that these instruments were accepted by the bank in settlement of the overdraft or indebtedness due it by J. L. Cartwright. There was no consideration flowing to H. L. Cartwright, in this transaction, but he endorsed one of the notes and signed the separate instrument to the effect that he would see that, when a payment was made on the note which he had endorsed, a like payment would be made on the other note, purely as an accommodation for his son, J. L. Cartwright. This made him a surety for said indebtedness of his son, instead of a guarantor. Where the consideration is for the benefit of the principal, the contract is one of suretyship; and where the consideration is one of benefit flowing to the guarantor, the contract is one of guaranty. The Code, § 103-101, provides: "The contract of suretyship is one whereby a person obligates himself to pay the debt of another in

consideration of credit or indulgences, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." In *Manry* v. *Waxelbaum Company,* 108 *Ga.* 14, 17 (33 S. E. 701), Judge Cobb, in dealing with the question of suretyship and guaranty, said: "The two terms are frequently used interchangeably, and for this reason a great confusion has arisen in the books as to the proper distinction to be drawn between them. A guarantor is a surety in the sense that he obligates himself to pay the debt of another, but at the same time there is a very clear distinction between them. One difference is pointed out by our Code. It says that a contract of suretyship 'differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor.'" Also, see *Wright* v. *Shorter,* 56 *Ga.* 72, 77, as to the difference between mere sureties and guarantors.

We think that the trial judge properly construed the instrument in question as a contract of suretyship, and he did not err in so ruling, as complained of in special ground 1 of the motion for a new trial. Nor did he err in charging the jury as complained of in special grounds 2 and 3, as the jury was authorized to find from the evidence that this instrument and the two notes were part of the same transaction between the two Cartwrights and the bank by which the indebtedness of the son, J. L. Cartwright, to the bank was adjusted.

■ The separate writing signed by the defendant, H. L. Cartwright, is unambiguous, and the trial judge did not err in sustaining paragraphs 3 and 4 of the plaintiff's demurrer to paragraphs 10 and 11 of the defendant's answer, on the ground that these paragraphs of the answer had the effect of changing, altering, and varying the terms of said written instrument.

■ According to the evidence, three payments of the same amounts were made by J. L. Cartwright on each of the two notes, and then the balance due on the note that was endorsed by H. L. Cartwright was paid by him. Under the contract of suretyship herein referred to and the law and the facts of this case, we think that the defendant, H. L. Cartwright, is liable for the balance due on the note sued on, and we so hold.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, page 232), requiring that the full court con-

sider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Broyles, C. J., Sutton, P. J., MacIntyre, and Parker, JJ., concur. Felton and Gardner, JJ., dissent.*

FELTON, J., dissenting. I agree with the majority that the court did not err in overruling the general demurrer to the petition. I think, however, that the reason for such a ruling forecloses the other questions involved against the bank. The letter written by the defendant in connection with the signing of the two notes is plain and unambiguous. The question is, what is meant by the expression, "whenever a payment is made on the note which I have endorsed." "Payment is not a word of technical legal meaning. It is well understood by the layman and, indeed, was brought into law proceedings from commercial life and not from the law treatises. It has been defined as the discharge of an obligation by the delivery and acceptance of money, or of something equivalent to money, which is regarded as such at the time by the person to whom the payment is due. Payment may also be defined as the performance of the consideration clause of a contract, or the satisfaction of a liability imposed by law. It implies a debt from him who pays to him who is to receive, *and that when the payment is complete the debt will be discharged."* 40 Am. Jur. 715, § 2. "A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor." Code, § 14-901. "Where the instrument is paid by a party secondarily liable thereon, it is not discharged." § 14-903. "A payment made by an indorser in partial discharge of his liability as such is held by high authority not to diminish the liability of the orignal maker to any extent, and the holder is still entitled to recover judgment against the maker for the full amount of the paper, although to the extent of the payment made by the indorser the recovery must be held in trust for him. Of course, the maker is not discharged pro tanto by the indorser's payment if the holder agrees with the indorser to keep the note alive for the benefit of the latter." 8 Am. Jur. 480, § 833. See also 8 Am. Jur. 201, § 450. Under the foregoing authorities, the meaning of the letter is that, if the *principal debtor* made a payment on the note indorsed by the defendant, which would have the effect of discharging the note as to the principal debtor to the extent of such payment, then the defendant would see that a like

payment was made on the note not indorsed. The effect of the agreement is that the defendant agrees to indorse both notes, but at the same time *limits his liability to the payment of only one note.* For illustration, if the principal debtor had made full payment of the indorsed note, and the defendant had not seen that like payments were made on the unindorsed note, then the defendant would have been liable for the amount of the unindorsed note. If nothing had been paid on either note, the defendant's liability would have been the amount of the indorsed note and not the unindorsed note. If the principal debtor had paid half of the indorsed note and failed to see that like payments were made on the unindorsed note, the liability of the defendant would be one-half of the indorsed note and one-half of the unindorsed note. His liability might have been less, but it could not have been more than the amount of indebtedness on one note. The petition alleges that from time to time "payments" were made until the indorsed note was paid in full. Giving to the word payment, as used in the petition, the same meaning which we have given it in the letter, the allegation in the petition means that the various payments on the indorsed note were made by the principal debtor, and that such payments discharged the note as to the maker and the indorser.

The evidence shows that most of the indorsed note was paid by the defendant and not by the maker of the note. The defendant, therefore, has not breached his obligation. The majority opinion is largely taken up with a discussion of whether the obligation assumed by the defendant was that of guarantor or surety. It is clear that his obligation was that of surety, but the answer to that question does not solve the problem. The vital question is, what is the effect of the agreement? The majority holds that the obligation of the defendant is virtually that of an indorser of both notes. To me such a result is absolutely untenable. To attribute to the parties such an intention is to make them ridiculous. The defendant positively refused to endorse both notes because he said he could not afford to have two endorsements show on his financial statement. Despite this, the majority would force him to endorse both notes. This is merely by way of argument, not that it has anything to do with the interpretation of the unambiguous terms of the agreement. It merely gives support to what the legal meaning of the contract is. I do not think that the majority's inter-

pretation of the contract is reasonable or sound, and it is not supported by even one citation of authority. We have held that the contract was unambiguous and the only thing we can do is to declare its legal meaning. I have no recourse but to dissent from the principal ruling. I also dissent from the ruling as to paragraph 11 of the answer. *Gardner, J., concurs in the dissent.*