## 56895. WHITE v. CHAPMAN et al.

SHULMAN, Judge.

Appellant, William H. White d/b/a Southern Investment Company, a factoring company, entered into an agreement to purchase by assignment various contracts of Holloway Enterprises, Inc. When appellant did not receive the payment due on a particular contract which appellant had purchased by assignment, legal proceedings were instituted against Harold A. Dye and James G. Chapman, two former corporate officers of Holloway, on an alleged continuing guaranty contract executed individually by Dye and Chapman. At the close of all the evidence in the ensuing jury trial, the trial court granted Dye and Chapman's respective motions for directed verdict. This appeal is from the judgment entered on those verdicts.

1. The instrument under which appellant seeks to hold appellees liable is denominated "Unconditional Guaranty and Indemnification" and provides in pertinent

part as follows:

"Witnesseth:

"That whereas, Holloway Enterprises, Inc. desires to sell certain contract(s) or accounts receivable from time to time to W. H. White d/b/a Southern Investment Company, and

"Whereas, Southern Investment Company is willing to purchase by assignment certain contract(s) representing moneys due Holloway Enterprises, Inc. provided it receives the guaranty of the undersigned guaranteeing the performance by Holloway Enterprises, Inc. of its obligations, promises and warranties to Southern Investment Company relating to the purchase of such contract(s) or receivables.

"Now, Therefore, in consideration of Southern Investment Company purchasing by assignment certain contract(s) or receivables of Holloway Enterprises, Inc. in an amount not to exceed $100,000 at any given time, the undersigned hereby guarantee absolutely and unconditionally the payment by Holloway Enterprises, Inc. to Southern Investment Company of any and all sums which may become due to Southern Investment Company by reason of its purchase of such contract(s) or receivables and to further indemnify Southern Investment Company against any and all claims, losses or damages it may incur or suffer by reason of the failure of Holloway Enterprises, Inc. to perform its obligations to Southern Investment Company.

"This guaranty is a continuing guaranty. . ."

Although denominated a "guaranty," the document is, as the trial court held, a surety agreement. See, e.g., *Fagelson v. Pfister Aluminum Corp.,* 109 Ga. App. 663 (1) (137 SE2d 313).

This "guaranty" was executed contemporaneously with a certain "Financing Agreement." The financing agreement between Harold Dye as president of Holloway Enterprises and appellant referred specifically to seven Holloway contracts then in effect and provided that in consideration of the assignment of the seven named contracts, appellant would pay Holloway a stated percentage of the money due under the contracts.

The trial court, construing the "Unconditional

Guaranty and Indemnification" and "Financing Agreement" as one contract (see, e.g., *Berger v. Mercantile Nat. Bank,* 231 Ga. 680 (203 SE2d 479), reversing holding in 129 Ga. App. 707 (1) (200 SE2d 921)), held that the alleged unconditional guaranty executed by appellees "was limited to any liability that may arise from the seven (7) contracts assigned in the [the Financing Agreement]; thus to make the sureties liable for any obligations arising out of contracts beyond the seven (7) assigned would be an increase of the risk of the sureties and an [unwarranted and impermissible] extension of the sureties liability by implication . . ."

The trial court further held that appellees could not be liable under the surety instrument for the debt in the instant case, because such debt did not involve any contract recited in the financing agreement. Appellant urges that the construction of the "Unconditional Guaranty" so as to limit its scope to the contracts listed in the financing agreement was in error. We, too, must take issue with the trial court's interpretation.

Even construing the documents as one contract, the language of the documents militates against a limiting construction. The financing agreement contemplated future assignments by conferring on Southern Investment Company the "right to set off [delinquent amounts owing from the seven assigned contracts] against payments due [Southern Investment Company] under any subsequent contract(s) assigned by it from [Holloway]. . ." The "Unconditional Guaranty" similarly contemplates future dealings. The surety agreement recites that "Holloway Enterprises, Inc. desires to sell certain contract(s) or accounts receivable *from time to time* to W. H. White d/b/a Southern Investment Company." (Emphasis supplied.) It further provides that the surety contract was "in consideration of Southern Investment Company purchasing by assignment certain contracts or receivables of Holloway Enterprises, Inc. in an amount not to exceed $100,000 *at any given time* . . ." (Emphasis supplied.) Therefore, we hold that the unconditional surety agreement embraced as a class any indebtedness arising by reason of subsequent purchases by assignment of contracts or receivables and was not

limited in its scope to the seven contracts named in the financing agreement. As the contract is clear and unambiguous, no resort to rules of construction is necessary. Compare *Beavers v. LeSueur,* 188 Ga. 393 (3) (3 SE2d 667), holding that a security deed for a note which applied to all other indebtedness would not cover an unliquidated claim for legal malpractice, as such a claim was not included in the class of liabilities for which the deed was given as security. If the surety contract was intended to restrict liability to particular transactions, words to that effect should have been chosen. As written, it did not accomplish this. *Manry v. Waxelbaum Co.,* 108 Ga. 14 (3) (33 SE 701). Accordingly, the verdict in favor of Messrs. Dye and Chapman cannot be upheld on the basis that the surety contract did not apply to the debt appellant seeks to recover.

2. Appellees, citing *Haynie v. First Nat. Bank of Atlanta,* 117 Ga. App. 766 (162 SE2d 27), argue that the verdict was demanded in their favor because the undisputed evidence showed that the surety agreement had been revoked before the plaintiff advanced the funds on the Holloway contract, which contract serves as the basis for the sureties' alleged liability in this action.

Appellant argues that the alleged revocation was not in accordance with the surety contract and not such "clearly expressed, unqualified, positive and absolute" notice as would effect a termination of the sureties' liability. See *Haynie,* supra, p. 769.

The Holloway contract which forms the basis of this action was assigned to Southern Investment Company on July 16, 1975. The alleged revocation occurred in April, 1976. Because the consideration for the Holloway contract had been executed, the alleged revocation could not be effective so as to abrogate the sureties' liability for responsibilities incurred while the surety contract was in force. As to the assignment of this contract, the offer of surety had been accepted and was not revocable. Compare *Rawleigh Medical Co. v. Burney,* 22 Ga. App. 492 (3) (96 SE 578), holding that upon withdrawal, if the consideration for the guaranty is not executed, the guarantor "will not be held liable for any indebtedness incurred after giving notice [of withdrawal]." See

generally 38 CJS 1174, Guaranty, § 36. Since the notice of revocation was ineffective as to the contract on which this action is based, we need not consider the sufficiency thereof.

3. Appellees submit that appellant's breach of the conditions of the surety agreement increased the risk and discharged them from the surety contract as a matter of law.

A. Contrary to appellees' contentions, the evidence is conflicting and does not show without contradiction that Southern Investment Company had advanced money prior to the completion of the requisite work.

B. Nor was the verdict demanded because the evidence showed that appellant purchased contracts in an amount greater than $100,000 on several occasions. The provision that the amount of assignments or accounts receivable purchased was not "to exceed $100,000 at any given time" expresses a limitation of, and not a condition of, liability. Although appellees' liability was limited to $100,000, this liability is in no way conditioned upon any monetary ceiling on the aggregate amount of assignments or receivables being purchased. Accordingly, the fact that purchases may have exceeded $100,000 on several occasions will not work a discharge. See *Carson v. Hurst & Co.,* 137 Ga. 640 (74 SE 52); *Craton v. Brock Candy Co.,* 137 Ga. App. 728 (141 SE 916); *Redfearn v. C & S Nat. Bank,* 122 Ga. App. 282 (2) (176 SE2d 627).

4. Having established that the surety agreement involved herein was unrevoked insofar as the purchase by assignment in this case is concerned, and that the surety contract was applicable to the debt sought to be enforced, appellant further asserts that each and every defense of appellees is insufficient. It is submitted that the trial court erred in denying appellant's motion for directed verdict. We cannot agree.

Appellees have presented sufficient evidence to raise an issuable defense as to whether appellant had breached the financing agreement by advancing funds without regard to work completed and thereby discharged them as sureties. See Division 3A of this opinion. See, e.g., *Berger v. Mercantile Nat. Bank,* supra, holding that absent a

waiver, the surety would be permitted to assert the defense that an advance of funds was contrary to a security agreement. See also *Lowndes Alliance Warehouse Co. v. Greene,* 17 Ga. App. 542 (87 SE 826).

Because we hold that appellees have presented evidence raising an issuable defense, we need not consider the alleged insufficiency of appellees' other defense.

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

ARGUED OCTOBER 31, 1978 — DECIDED MARCH 2, 1979 — REHEARINGS DENIED MARCH 20, 1979 — ▮▮▮▮▮▮▮▮

*Arnall, Golden & Gregory, Charles L. Gregory,* for appellant.

*O'Callaghan, Saunders & Stumm, Richard L. Stumm, B. Lee Crawford, Jr.,* for appellees.